BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Marc Hirschfield
Email:  mhirschfield@bakerlaw.com
Amy Vanderwal
Email:  avanderwal@bakerlaw.com
Attorneys for Chapter 11 Trustee of
Manhattan Investment Fund Ltd. and
Manhattan Capital Management, Inc.

DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333
Peter Ivanick
Email:  pivanick@deweyleboeuf.com
Attorneys for Official Committee of Unsecured
Creditors

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No.  00-10922 (BRL) |
| | 00-10921 (BRL) |
| MANHATTAN INVESTMENT FUND LTD., et al. | |
| | Chapter  11 |
| | Jointly Administered |
| Debtors. | |

**JOINT PLAN OF LIQUIDATION OF MANHATTAN INVESTMENT
FUND LTD. AND MANHATTAN CAPITAL MANAGEMENT, INC.
PROPOSED JOINTLY BY THE TRUSTEE AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

**Dated as of December 22, 2009**

# TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME ................................................................................................ 1

    Section 1.01    Definitions ................................................................................. 1

    Section 1.02    Rules of Interpretation ............................................................. 8

    Section 1.03    Computation of Time ................................................................ 9

ARTICLE II     UNCLASSIFIED CLAIMS  ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE FEES ............................. 9

    Section 2.01    Administrative Claims .............................................................. 9

    Section 2.02    Priority Tax Claims .................................................................. 9

    Section 2.03    U.S. Trustee Fees ................................................................... 10

ARTICLE III    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS .......................................................................................... 10

    Section 3.01    Classification Generally .......................................................... 10

ARTICLE IV    TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ................. 11

    Section 4.01    Class 1:  Priority Claims ......................................................... 11

    Section 4.02    Class 2:  General Unsecured Claims ....................................... 11

    Section 4.03    Class 3:  MCM General Unsecured Claims ............................ 12

    Section 4.04    Class 4:  Equity Interests ........................................................ 13

ARTICLE V     IMPLEMENTATION OF PLAN - CREATION OF LIQUIDATING TRUST ........................................................................................... 13

    Section 5.01    Continuing Existence .............................................................. 13

    Section 5.02    Creation of Liquidating Trust ................................................. 14

    Section 5.03    Transfer of Estate Property ..................................................... 14

    Section 5.04    Vesting of Property in Liquidating Trust ................................ 14

ARTICLE VI    PROVISIONS GOVERNING DISTRIBUTIONS ..................................... 15

    Section 6.01    Distributions ............................................................................ 15

    Section 6.02    Distributions Made by Liquidating Trustee ............................ 16

    Section 6.03    Distributions of Cash .............................................................. 16

    Section 6.04    Delivery of Distributions and Undeliverable Distributions ............... 16

    Section 6.05    Withholding and Reporting Requirements ....................................... 17

    Section 6.06    Time Bar to Cash Payments .................................................... 17

Section 6.07        Setoffs ........................................................................ 18

Section 6.08        Professional Fees and Expenses.................................... 18

Section 6.09        Transactions on Business Days...................................... 19

Section 6.10        Minimum Distributions.................................................. 19

ARTICLE VII        PROCEDURES FOR RESOLVING AND TREATING DISPUTED
                    CLAIMS ........................................................................ 19

Section 7.01        No Distribution Pending Allowance ............................... 19

Section 7.02        Objections to Disputed Claims ...................................... 20

Section 7.03        Estimation ..................................................................... 20

Section 7.04        Claims Resolution ......................................................... 21

Section 7.05        Reserve Accounts for Disputed Claims ........................... 21

Section 7.06        Investment of Reserve Fund ........................................... 21

Section 7.07        Allowance of Disputed Claims ...................................... 22

Section 7.08        Late Claims ................................................................... 22

ARTICLE VIII       TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                    LEASES........................................................................ 23

Section 8.01        Executory Contracts and Unexpired Leases ................... 23

Section 8.02        Bar Date for Filing Proofs of Claim Relating to Executory
                    Contracts and Unexpired Leases Rejected Pursuant to This
                    Plan ............................................................................... 23

Section 8.03        Retiree Benefits............................................................. 23

ARTICLE IX         EFFECTIVENESS OF THIS PLAN ........................................ 24

Section 9.01        Conditions to the Effective Date.................................... 24

Section 9.02        Waiver of Conditions.................................................... 24

ARTICLE X          EFFECT OF CONFIRMATION ........................................... 25

Section 10.01       Jurisdiction of Court ..................................................... 25

Section 10.02       Binding Effect............................................................... 25

Section 10.03       Term of Injunctions or Stays......................................... 25

Section 10.04       Rights of Action............................................................ 25

Section 10.05       Injunction ..................................................................... 26

Section 10.06       Release .......................................................................... 26

ARTICLE XI       RETENTION OF JURISDICTION ................................................................ 27

      Section 11.01       Jurisdiction of Court ........................................................ 27

ARTICLE XII       MISCELLANEOUS PROVISIONS ...................................................... 29

      Section 12.01       Dissolution of the Committee and Formation of LT Committee ....... 29

      Section 12.02       Effectuating Documents and Further Transactions ........................... 29

      Section 12.03       Sale of Debtors' Remaining Property ............................... 29

      Section 12.04       Exemption from Transfer Taxes ....................................... 30

      Section 12.05       Exculpation ........................................................................ 30

      Section 12.06       Bar Date for Requests for Allowance of Administrative Claims ...... 30

      Section 12.07       Post-Confirmation Date Fees and Expenses of Professionals ........... 31

      Section 12.08       Payment of Statutory Fees ............................................... 31

      Section 12.09       Modification of Plan ........................................................ 32

      Section 12.10       Withdrawal or Revocation ............................................... 32

      Section 12.11       Courts of Competent Jurisdiction ................................... 32

      Section 12.12       Notices ................................................................................ 33

      Section 12.13       Severability ........................................................................ 34

      Section 12.14       Governing Law ................................................................. 34

      Section 12.15       Failure of Effective Date ................................................. 34

      Section 12.16       Exhibits ............................................................................. 35

Helen Gredd, Esq., as chapter 11 trustee (the "Chapter 11 Trustee") for Manhattan

Investment Fund Ltd. ("MIFL") and Manhattan Capital Management, Inc. ("MCM," and

together with MIFL, the "Debtors") and the Official Committee of Unsecured Creditors (the

"Committee" and, together with the Chapter 11 Trustee, the "Proponents") hereby jointly

propose the following joint plan of liquidation pursuant to Chapter 11 of the United States

Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

## ARTICLE I
## DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

Section 1.01   **Definitions**.  As used herein, the following terms have the respective

meanings specified below.

"**Administrative Claim**" means a Claim for payment of an administrative

expense of any kind described in section 503(b) of the Bankruptcy Code and entitled to priority

in payment under sections 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code, including,

without limitation: (a) the actual and necessary costs and expenses incurred after the Petition

Date for preserving the Estates; and (b) compensation for Professionals' fees under sections

330(a), 331 or 1103 of the Bankruptcy Code.

"**Allowed Claim**" means a Claim, including without limitation, a General

Unsecured Claim, a MCM General Unsecured Claim, a Priority Claim and a Priority Tax Claim,

to the extent that such Claim is (a) either: (i) scheduled by the Debtors pursuant to the

Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent,

unliquidated or disputed; or (ii) proof of which has been timely filed under applicable law or

order of the Court, with the Court, pursuant to the Bankruptcy Code, the Bankruptcy Rules or

any applicable orders of the Court, or late filed with leave of the Court after notice and a hearing;

and (b) either: (i) not objected to within the period fixed by the Bankruptcy Code, the

Bankruptcy Rules or orders of the Court, or (ii) otherwise allowed by a Final Order, including,

without limitation, the Confirmation Order.

"**Allowed Administrative Claim**" means an Administrative Claim to the extent

that such Administrative Claim is: (i) filed in accordance with the provisions of Section 12.06 of

this Plan and which is not the subject of an objection timely filed in accordance with such

provisions, or (ii) allowed by a Final Order, including, without limitation, the Confirmation

Order.

"**Available Cash**" means all Cash of the Estates less the amount of Cash of the

Estates in or designated for deposit in the Reserve Fund.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern

District of New York, which has jurisdiction over the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the

Official Bankruptcy Forms promulgated under 28 U.S.C. § 2075, and the local rules and standing

and administrative orders of the Bankruptcy Court, and as each has been, or may be, amended

from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Business Day**" means any day, other than a Saturday, Sunday or a "legal

holiday" (as defined in Bankruptcy Rule 9006(a)).

"**Cash**" means money that is legal tender of the United States of America.

"**Causes of Action**" means all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment and claims, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances and trespasses of, or belonging to, the Estates, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including, without limitation, any causes of action the Debtors or Estates may have against any Person arising under Section 547 and 548 of the Bankruptcy Code.  The term shall also include any relief that may be sought by a trustee under the Bankruptcy Code whether by adversary proceeding or otherwise.

"**Chapter 11 Cases**" mean the above-captioned chapter 11 cases commenced by the Debtors and pending before the Bankruptcy Court.

"**Chapter 11 Trustee**" means Helen Gredd, Esq., the chapter 11 trustee for the Debtors appointed herein.

"**Claim**" means any claim against the Debtors within the meaning of section 101(5) of the Bankruptcy Code, whether or not asserted.

"**Class**" means a category of Claims or Equity Interests, as classified under this Plan.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as membership of same may have been or may be reconstituted from time to time.

"**Confirmation Date**" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Court**" shall have the same meaning as Bankruptcy Court.

"**Disclosure Statement**" means the Disclosure Statement dated December 22, 2009, describing the Plan that has been approved by the Bankruptcy Court and distributed in accordance with Section 1125(d) of the Bankruptcy Code.

"**Disputed Claim**" means a Claim or request for payment, as the case may be, as to which (a) a proof of claim or a request for payment of an administrative expense has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.

"**Effective Date**" means the tenth Business Day after the date on which the Confirmation Order becomes a Final Order or as soon thereafter as practicable.

"**Equity Interest**" means any ownership interest in the Debtors, including but not limited to, an interest in any issued, unissued, authorized or outstanding preferred shares or common shares with any or no designation, options, warrants, any securities convertible with common shares or preferred shares, and any contractual right to purchase or acquire such interests at any time and all rights arising with respect thereto.

"**Estates**" means the estates of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases on the Petition Date.

"**Final Distribution Date**" means the date on which the Liquidating Trustee makes a final distribution of Available Cash pursuant to this Plan.

"**Final Order**" means an order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Chapter 11 Trustee or, on and after the Effective Date, the Liquidating Trustee or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing was sought and shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

"**General Unsecured Claim**" means a Claim against MIFL that is not an Administrative Claim, a Priority Tax Claim, or a Priority Claim.

"**Impaired Class**" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Initial Distribution**" means that distribution of Available Cash made on or as soon as practicable after the Effective Date in accordance with the provisions of Section 6.01 of the Plan.

"**Liquidating Trust**" means the trust created by the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means the instrument governing the Liquidating Trust, in substantially the form attached hereto as Exhibit 1, as the same may be amended, supplemented or modified from time to time.

"**Liquidating Trustee**" means Helen Gredd, Esq. and any successor appointed as provided in the Liquidating Trust Agreement.

"**Liquidating Trust Committee**" or "**LT Committee**"  means up to three (3) members of the Committee serving on the LT Funding Date who have elected to serve on the LT Committee, or any successor as provided in the Liquidating Trust Agreement.

"**Liquidating Trust Funding Date**" or "**LT Funding Date**" means the Effective Date.

"**MCM General Unsecured Claim**" means a claim a Claim against MCM that is not an Administrative Claim, a Priority Tax Claim, or a Priority Claim.

"**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means March 7, 2000.

"**Plan**" means this joint chapter 11 plan of reorganization, as the same may be amended or modified by the Chapter 11 Trustee from time to time pursuant to the Plan, the Bankruptcy Code or the Bankruptcy Rules.

"**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

"**Priority Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

"**Professionals**" means the professionals retained by the Debtors or the Committee under section 327 of the Bankruptcy Code or to be compensated pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4) of the Bankruptcy Code.

"**Ratable or Ratable Share**" means a number (expressed as a percentage) equal to the proportion that a Claim bears to the aggregate amount of Claims, including Disputed Claims, in such class as of the date of determination.

"**Reserve Fund**" means the funds held by the Debtors, prior to the Effective Date, or the Liquidating Trustee, thereafter, as a reserve for (a) Disputed Claims, (b) Allowed Claims as to which no distribution, or only a partial distribution, has been made, (c) the amount of incurred and projected expenses of the Liquidating Trust for which, in the Liquidating Trustee's reasonable judgment, it is prudent to reserve, and (d) any other matters for which, in the Liquidating Trustee's judgment, it is prudent to reserve.

"**Schedules**" means the schedules of assets, liabilities and executory contracts and the statement of financial affairs of the Debtors that were filed pursuant to section 521 of the Bankruptcy Code, as each has been, or may be, amended and supplemented from time to time.

"**Subsequent Distribution Date**" means any date(s), as determined by the Liquidating Trustee, pursuant to the terms of the Liquidating Trust Agreement, after the LT Funding Date and prior to the Final Distribution Date, on which a distribution of Available Cash is made to holders of Allowed Claims.

"**U.S. Trustee Fees**" means all fees and charges assessed against the Estates by the United States Trustee and due pursuant to section 1930 of title 28 of the United States Code.

Section 1.02 **Rules of Interpretation**. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter genders; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed shall mean such document or exhibit, as it may have been or may be amended, modified, supplemented or restated; (d) unless otherwise specified, all references in the Plan to Subsections, Sections, Articles and Exhibits are references to Subsections, Sections, Articles and Exhibits of or to the Plan; (e) the words "hereof", "herein", "hereto" and "hereunder" and comparable terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include," "includes" and "including" shall not be

limiting and shall be deemed to be followed by "without limitation" whether or not they are, in fact, followed by such words or words of like import; (g) captions and headings to Subsections, Sections and Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (i) in the event of any inconsistency between the terms of the Plan and the terms of the Disclosure Statement, the terms of the Plan shall control.

Section 1.03    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## UNCLASSIFIED CLAIMS
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE FEES

Section 2.01    **Administrative Claims**.  Except to the extent the Chapter 11 Trustee if acting prior to the Effective Date, or otherwise the Liquidating Trustee, and the holder of an Allowed Administrative Claim agree to a different treatment, the Liquidating Trustee shall pay to each holder of an Allowed Administrative Claim Cash from Available Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date and (ii) thirty days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.

Section 2.02    **Priority Tax Claims**.  Except to the extent the Chapter 11 Trustee, if acting prior to the Effective Date, or otherwise the Liquidating Trustee, and the holder of an Allowed Priority Tax Claim agree to a different treatment, the Liquidating Trustee shall pay Cash to such holder of a Priority Tax Claim which is an Allowed Claim in an amount equal to the amount of such Allowed Priority Tax Claim on the later of (i) the Effective Date and (ii)

thirty days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

Section 2.03    **U.S. Trustee Fees**.  The Chapter 11 Trustee or the Liquidating Trustee, as the case may be, shall pay all U.S. Trustee Fees until such time as the Court enters a final decree closing the Chapter 11Cases.

**ARTICLE III**
**DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

Section 3.01    **Classification Generally**.  Claims, other than Administrative Claims and Priority Tax Claims, are classified for all purposes, including voting, confirmation and distribution, as follows:

| Class | Status | Voting Rights |
|---|---|---|
| | | |
| Class 1 (Priority Claims) | Unimpaired | Not entitled to vote - deemed to accept the Plan |
| Class 2 (General Unsecured Claims) | Impaired | Entitled to vote |
| Class 3 (MCM General Unsecured Claims) | Impaired | Entitled to vote |
| Class 4 (Equity Interests) | Impaired | Not entitled to vote - deemed to reject the Plan |

# ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**Section 4.01** **Class 1: Priority Claims**.

(a) **Impairment Status and Voting Rights**. Class 1 Claims are Unimpaired by the Plan and the holders of Allowed Class 1 Claims are deemed to accept the Plan and therefore are not entitled to vote.

(b) **Treatment**. Except to the extent the Chapter 11 Trustee if acting prior to the Effective Date, or otherwise the Liquidating Trustee, and the holder of an Allowed Administrative Claim agree to a different treatment, each holder of an Allowed Claim in Class 1 shall receive Cash in an amount equal to the amount of such Allowed Claim on the later of (i) the Effective Date, or (ii) thirty (30) days after the date on which such Claim becomes an Allowed Priority Claim.

**Section 4.02** Class 2: **General Unsecured Claims**.

(a) **Impairment Status and Voting Rights**. Holders of Allowed Claims in Class 2 are impaired and are entitled to vote on the Plan.

(b) **Treatment**. After satisfaction in full or reservation of (i) all Allowed Administrative Claims and Allowed Priority Tax Claims as provided in Article II of the Plan and (ii) all Allowed Claims in Class 1 as provided for in this Article IV of the Plan, except to the extent the Chapter 11 Trustee if acting prior to the Effective Date, or otherwise the Liquidating Trustee, and the holder of an

Allowed General Unsecured Claim agree to a different treatment, each holder of

an Allowed Claim in Class 2 shall receive its ratable share of Available Cash (not

to exceed the amount of the Allowed Claim) on the later of (i) the Effective Date,

or (ii) thirty (30) days after the date on which such Claim become an Allowed

General Unsecured Claim, or as soon thereafter as is practicable.  After the

Effective Date and after the satisfaction in full or reservation of all Allowed

Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in

Class 1, each holder of an Allowed Claim in Class 2 will be paid by the

Liquidating Trustee on each Subsequent Distribution Date, if any, and the Final

Distribution Date, its Ratable Share of Available Cash on account of its Allowed

General Unsecured Claim.

Section 4.03    Class 3:  **MCM General Unsecured Claims**.

(a)    **Impairment Status and Voting Rights**.  Holders of Allowed

Claims in Class 3 are impaired and are entitled to vote on the Plan.

(b)    **Treatment**.  After satisfaction in full or reservation of (i) all

Allowed Administrative Claims and Allowed Priority Tax Claims as provided in

Article II of the Plan and (ii) all Allowed Claims in Class 1 as provided for in this

Article IV of the Plan, except to the extent the Chapter 11 Trustee if acting prior

to the Effective Date, or otherwise the Liquidating Trustee, and the holder of an

Allowed MCM General Unsecured Claim agree to a different treatment, each

holder of an Allowed MCM General Unsecured Claim in Class 3 shall receive its

ratable share of Available Cash (not to exceed the amount of the Allowed Claim)

on the later of (i) the Effective Date, or (ii) thirty (30) days after the date on which such Claim become an Allowed General Unsecured Claim, or as soon thereafter as is practicable.  After the Effective Date and after the satisfaction in full or reservation of all Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in Class 1, each holder of an Allowed Claim in Class 3 will be paid by the Liquidating Trustee on each Subsequent Distribution Date, if any, and the Final Distribution Date, its Ratable Share of Available Cash on account of its Allowed MCM General Unsecured Claim.

Section 4.04    **Class 4:  Equity Interests**.

(a)    **Impairment**.  The holders of Equity Interests in Class 4 are impaired and are conclusively presumed to have rejected this Plan and are not entitled to vote to accept or reject the Plan.

(b)    **Treatment**.  The Equity Interests are subordinate to all Claims, and shall receive no distribution under the Plan.  All Equity Interests shall be cancelled on the Effective Date.

**ARTICLE V**
**IMPLEMENTATION OF PLAN - CREATION OF LIQUIDATING TRUST**

Section 5.01    **Continuing Existence**.  From and after the Confirmation Date, the Debtors shall continue in existence for the purpose of (i) winding up their affairs as expeditiously as reasonably possible, (ii) assisting in the liquidation, by conversion to Cash or other methods, of any remaining assets of the Estates, and (iii) reconciling Claims and resolving Disputed

Claims.  As soon as reasonably practicable after the LT Funding Date, the Debtors shall be dissolved.

Section 5.02 **Creation of Liquidating Trust**.  The Chapter 11 Trustee, on behalf of the Debtors shall, as soon as practicable after the Confirmation Date but in any event before the Effective Date, (i) execute the Liquidating Trust Agreement, and (ii) take all other steps necessary to establish the Liquidating Trust.  On the Effective Date, the Liquidating Trust Agreement shall become effective.

Section 5.03 **Transfer of Estate Property**.  On the LT Funding Date, the Chapter 11 Trustee on behalf of the Debtors shall transfer to the Liquidating Trust all property of the Estates, including, without limitation, all Cash of the Estates, all Causes of Action and the Reserve Fund, free and clear of any interest in such property of the Debtors or any other person or entity, except with respect to the Initial Distribution.

Section 5.04 **Vesting of Property in Liquidating Trust**.  On the LT Funding Date, title to all property of the Debtors and the Estates shall vest in the Liquidating Trust, and the Debtors or such other Persons as may have possession or control of such property shall transfer possession or control of such property to the Liquidating Trustee.

Section 5.05 **Liquidating Trustee**.  The Chapter 11 Trustee shall serve as Liquidating Trustee.  The Liquidating Trustee shall manage the affairs of the Liquidating Trust and exercise all rights, powers and privileges granted to the Liquidating Trust by the Plan or the Liquidating Trust Agreement.  The responsibilities and powers of the Liquidating Trust, the Liquidating Trustee and the LT Committee are set forth in full in the Liquidating Trust Agreement which is attached hereto as Exhibit 1.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

Section 6.01   **Distributions**.

1.     <u>Effective Date Payments</u>.  On the Effective Date, or as soon thereafter as practicable, the Initial Distribution shall be made.  The Initial Distribution shall consist of Available Cash to be paid to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed General Unsecured Claims and Allowed MCM General Unsecured Claims, as provided in Articles II and IV of the Plan. Holders of Claims against MIFL shall be paid from Available Cash derived from MIFL's property, while holders of Claims against MCM shall be paid from Available Cash derived from MCM's property.  All payments shall be made in accordance with the priorities established by the Bankruptcy Code.

2.     <u>Distributions on a Subsequent Distribution Date</u>.  Unless otherwise provided in this Plan, to the extent there is Available Cash subsequent to the Effective Date, the Liquidating Trustee shall, on each Subsequent Distribution Date, distribute to the holders of Claims that were Allowed Claims on the Effective Date or subsequently became an Allowed Claim on or before the Subsequent Distribution Date, Available Cash in an amount equal to such holders' Ratable Share of all distributions of Cash to holders of Allowed Claims in the same Class since the Effective Date.

3.     <u>Distributions on the Final Distribution Date</u>.  To the extent there is Available Cash on the Final Distribution Date, the Liquidating Trustee shall distribute all such Available Cash to the holders of Claims entitled thereto that were Allowed before

and as of the Final Distribution Date, less any amounts necessary to pay expenses of the Liquidating Trust.

Section 6.02 **Distributions Made by Liquidating Trustee**. All distributions to be made pursuant to the terms of this Plan shall be made by the Liquidating Trustee.

Section 6.03 **Distributions of Cash**. At the option of the Liquidating Trustee, any Cash payment to be made by the Liquidating Trustee pursuant to this Plan shall be made by (i) a check drawn on a domestic bank or (ii) by wire transfer following a written request therefor and subject to a deduction for the costs associated with the wire transaction.

Section 6.04 **Delivery of Distributions and Undeliverable Distributions**. Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Court unless superseded by the address as set forth on the proofs of claim filed by such holders or by a written notice to the Liquidating Trustee providing actual knowledge to the Liquidating Trustee of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Liquidating Trustee is notified in writing, in accordance with the notice provisions in Section 12.12 hereof, of such holder's then current address, at which time all distributions shall be made to such holder, without interest. All claims for undeliverable distributions shall be made on or before the earlier of (i) with respect to the initial distributions made on or after the Effective Date, ninety (90) days after the date such undeliverable distribution was initially made, or (ii) with respect to the distributions made on a Subsequent Distribution Date, sixty (60) days after the date such undeliverable distribution was initially made. If any claim for an undeliverable distribution is not timely made as provided in the

foregoing sentence, such Claim shall be forever barred. After such date (as applicable), all

unclaimed property shall be applied first to satisfy the costs of administering and fully

consummating this Plan (including with respect to the Liquidating Trustee), then to Available

Cash for distribution in accordance with this Plan, and the holder of any such Claim shall not be

entitled to any other or further distribution under this Plan on account of such undeliverable

distribution or such Claim.

Section 6.05 **Withholding and Reporting Requirements**. In connection with this

Plan and all instruments issued in connection therewith, the Debtors and Liquidating Trustee

shall comply with all applicable withholding and reporting requirements imposed by any federal,

state or local taxing authority, and all distributions under this Plan shall be subject to any such

withholding or reporting requirements. The Trustee intends to file federal income tax returns for

MCM but does not intend to file federal income tax returns for MIFL due to the fact that MIFL is

a foreign corporation that was not engaged in a United States trade or business.

Section 6.06 **Time Bar to Cash Payments**. Checks issued in respect of Allowed

Claims which are not returned as undeliverable shall be null and void if not negotiated within

sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be

made to the Liquidating Trustee, in accordance with the notice provisions of Section 12.12 of

this Plan, by the holder of the Allowed Claim to whom such check originally was issued, on or

before the date thirty (30) days after the expiration of the sixty day period following the date of

issuance of such check. After such date (as applicable), all funds held on account of such voided

check shall be applied first to satisfy the costs of administering and fully consummating this Plan

(including with respect to the Liquidating Trustee), then to Available Cash for distribution in

accordance with this Plan, and the holder of any such Claim shall not be entitled to any other or

further distribution under this Plan on account of such voided check or such Claim.  To the extent funds are held on account of voided checks after the Final Distribution Date, such funds may be distributed to a charitable entity or organization (which entity or organization shall constitute an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986) of the Liquidating Trustee's choice.

Section 6.07    **Setoffs**.  The Chapter 11 Trustee on behalf of the Debtors or the Liquidating Trustee, as the case may be, may, in accordance with section 553 of the Bankruptcy Code and applicable non-bankruptcy law, setoff against or recoup from any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Debtors may hold against the holder of such Allowed Claim up to the amount of such claims, rights and Causes of Action; provided, however, that neither the failure to effect such a setoff or assert a recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Chapter 11 Trustee or the Liquidating Trustee of any such claims, rights and Causes of Action that the Debtors may possess against such holder, and provided further, however, that any claim of the Debtors arising before the Petition Date shall first be setoff against Claims against the Debtors arising before the Petition Date.  The Chapter 11 Trustee, on behalf of the Debtors or the Liquidating Trustee, as the case may be, shall send a notice of setoff to each holder of an Allowed Claim against whom it effects a setoff.

Section 6.08    **Professional Fees and Expenses**.  Each of the Professionals requesting compensation in the Chapter 11 Cases shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Confirmation Date on or before 45 days after the Confirmation Date with notice in accordance

with the Court's Order governing notice requirements in this Case.  Objections to any such

application shall be filed on or before 65 days after the Confirmation Date.

Section 6.09   **Transactions on Business Days**.  If the Effective Date or any other date

on which a transaction or act may occur under this Plan shall occur on a day that is not a

Business Day, the transaction or act contemplated by this Plan to occur on such day shall instead

occur on the next succeeding Business Day.

Section 6.10   **Minimum Distributions**.  If a distribution to be made to a given holder of

an Allowed Claim on the Effective Date or any Subsequent Distribution Date, including the

Final Distribution Date, would be $25.00 or less in the aggregate, notwithstanding any contrary

provision of this Plan, no such distribution will be made to such holder.  Should the holder of an

Allowed Claim hold both a General Unsecured Claim and a MCM General Unsecured Claim,

those claims shall be aggregated for the purposes of this section.  Any distributions withheld

pursuant to this Section shall become Available Cash for distribution in accordance with this

Plan or, with respect to the Final Distribution Date, amounts representing any such distributions,

may be distributed to a charitable entity or organization (which entity or organization shall

constitute an entity or organization described in section 170(c)(2) of the Internal Revenue Code

of 1986) of the Liquidating Trustee's choice.

## ARTICLE VII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

Section 7.01   **No Distribution Pending Allowance**.  Notwithstanding any other

provision of this Plan, no Cash or other property shall be distributed under this Plan on account

of any Disputed Claim, unless and until such Claim becomes an Allowed Claim, except with

respect to that portion of such Claim which is undisputed, distributions with respect to which are subject only to the provisions of Section 502(d) of the Bankruptcy Code.

Section 7.02    **Objections to Disputed Claims**.  Prior to the Effective Date, the Chapter 11 Trustee, on behalf of the Debtors shall have the right (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims.  After the Effective Date, the Liquidating Trustee shall have the exclusive right to make and file such objections.  A copy of each such objection to a Claim shall be served upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than ninety (90) days after the Confirmation Date; provided, however, that such ninety (90) day period may be extended by the Court on application of the Liquidating Trustee.

Section 7.03    **Estimation**.  Prior to the Effective Date, the Chapter 11 Trustee on behalf of the Debtors and thereafter the Liquidating Trustee, may, at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection had been filed to such Claim.  The Court will retain jurisdiction to estimate any Disputed Claim at any time, including during litigation concerning any objection to such Disputed Claim.  In the event that the Court estimates any Disputed Claim, that estimated amount may constitute the Allowed Amount of such Claim, the amount on which a reserve is to be calculated for purposes of the Reserve Fund, or a maximum limitation on such Claim, as determined by the Court.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims which have been estimated may be subsequently compromised,

settled, withdrawn or otherwise resolved, without further order of the Court, subject to the provisions of Section 7.04 of this Plan.

Section 7.04 **Claims Resolution**. The Liquidating Trustee shall review Claims that are not Allowed Claims and shall resolve such Claims through the claims objection process in the Court or by compromise. Court approval for compromise of a Claim shall not be required except as herein provided. Any compromise of a Claim in a disputed amount in excess of $200,000 shall be subject to the approval of the Court but such compromise shall not require notice to any party other than to the members of the LT Committee, and shall not require a hearing, unless the Court orders otherwise. Any compromise of a Claim with respect to which the amount in dispute is in excess of $100,000 shall also be subject to Court approval if the compromise is not approved by the LT Committee. The Liquidating Trustee, in her sole discretion, may submit resolutions of Claims in disputed amounts of $200,000 and less to the Court for its approval.

Section 7.05 **Reserve Accounts for Disputed Claims**. The Reserve Fund shall hold Cash in an aggregate amount sufficient (to the extent available) to pay each holder of a Disputed Claim (i) the amount of Cash that such holder would be entitled to receive under this Plan if such Claim were an Allowed Claim, or (ii) such lesser amount as the Court may estimate pursuant to Section 7.03 of this Plan or may otherwise order. Cash withheld and reserved for payments to holders of Disputed Claims shall be held in one or more segregated interest-bearing reserve accounts, as determined by the LT Committee or the Liquidating Trustee, to be used to satisfy such Claims if and when such Disputed Claims become Allowed Claims.

Section 7.06 **Investment of Reserve Fund**. The Liquidating Trustee shall be permitted, from time to time, in its sole discretion, to invest all or a portion of the Cash in the

Reserve Fund in United States Treasury Bills (or in a fund that invests substantially all of its assets in United States Treasury securities), interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk. All interest earned on such Cash in the first instance be returned to the Reserve Fund, and, after satisfaction of any expenses incurred in connection with the maintenance of the Reserve Fund, including taxes payable on such interest income, if any, such interest shall be transferred out of the Reserve Fund and shall be applied first to satisfy the costs of administering and fully consummating this Plan, then to Available Cash for distribution in accordance with the Plan.

Section 7.07 **Allowance of Disputed Claims**. If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall, within thirty (30) days of the date that such Claim becomes an Allowed Claim, or as soon thereafter as is practicable, distribute from the Reserve Fund to the holder of such Allowed Claim Cash in an amount equal to its Ratable Share of all distributions of Cash to holders of Allowed Claims in the same Class since the Effective Date.

Section 7.08 **Late Claims**. Except as otherwise expressly provided in this Plan, any Claim not deemed filed pursuant to Section 1111(a) of the Bankruptcy Code or timely filed pursuant to the Bankruptcy Code, Bankruptcy Rules or any applicable order of the Court, shall (a) not be treated as an Allowed Claim; and (b) be expunged from the Claims register in the Chapter 11 Cases without need for any further notice, motion or order.

# ARTICLE VIII
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 8.01 **Executory Contracts and Unexpired Leases**. Except as hereafter described in this Section 8.01, on the Confirmation Date, all executory contracts and unexpired leases between the Debtors and any other Person shall be deemed rejected as of the Confirmation Date, except for any executory contract or unexpired lease (i) which has been assumed, rejected or extended pursuant to an order of the Court entered prior to or on the Confirmation Date, or (ii) as to which a motion to assume such contract or lease has been filed and served prior to the Confirmation Date. Nothing in this Plan shall be deemed to extend the Debtors' time period under section 365(d)(4) of the Bankruptcy Code to assume and assign or reject executory contracts non-residential real property leases beyond the time periods established pursuant to separate order of the Court.

Section 8.02 **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to This Plan**. Proofs of claim, in the form required by Official Form No. 10, asserting Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.01 of this Plan must be filed with the Court on or before the twentieth day after the Confirmation Date or the thirtieth day after such rejection, if rejection occurred, pursuant to separate order of this Court, becomes effective. Any Claims not filed with the Court within such applicable time periods will be forever barred from assertion against the Debtors, the Estates and the Liquidating Trust.

Section 8.03 **Retiree Benefits**. The Debtors has no retiree benefit plans, funds or programs, as defined in section 1114 of the Bankruptcy Code, for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical,

surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise). Accordingly, no such payments will be made.

## ARTICLE IX
## EFFECTIVENESS OF THIS PLAN

Section 9.01 **Conditions to the Effective Date**.  The following are conditions precedent to the occurrence of the Effective Date of this Plan:

1.      The Court shall have entered the Confirmation Order in form and substance satisfactory to the Proponents;

2.      The Confirmation Order shall have become a Final Order;

3.      No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 9.01 are satisfied or, if permitted, waived;

4.      All documents, instruments and agreements, in form and substance satisfactory to the Proponents, provided for under or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby; and

5.      There shall exist sufficient Available Cash to pay all Administrative Claims, Priority Tax Claims and other Priority Claims which are Allowed Claims.

Section 9.02   **Waiver of Conditions**.  The Proponents may waive the conditions to effectiveness of this Plan set forth in Section 9.01 of this Plan.

**ARTICLE X**
**EFFECT OF CONFIRMATION**

Section 10.01  **Jurisdiction of Court**.  Until the Effective Date, the Court shall retain jurisdiction over the Debtors and their Estates.  Thereafter, jurisdiction of the Court shall be limited to the subject matters set forth in Article XI of this Plan.

Section 10.02  **Binding Effect**.  Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

Section 10.03  **Term of Injunctions or Stays**.  Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Final Distribution Date.

Section 10.04  **Rights of Action**.  On the Effective Date, the Liquidating Trustee shall be deemed to have taken an assignment of, and shall thereafter, retain and have the right to enforce any and all present or future rights, claims or Causes of Action, against any Person and with respect to any rights of the Debtors that arose before or after the Petition Date, including, but not limited to, rights, claims, Causes of Action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.  All present or future rights, claims or Causes of Action against any Person that existed prior to the Effective Date are preserved and are deemed assigned to the Liquidating Trustee whether or not such claims, rights or Causes of Action are identified in the Disclosure Statement.  The Liquidating Trustee, subject

to the terms of the Liquidating Trust Agreement, may pursue, abandon, settle or release any or all such claims, rights or Causes of Action, as it deems appropriate.

Section 10.05  **Injunction**.  **Pursuant to section 1141(d)(3) of the Bankruptcy Code, the confirmation of this Plan will not provide the Debtors with a discharge.  However, on and after the Effective Date, unless modified by an order of the Court entered on notice to the Liquidating Trustee and the LT Committee and for cause shown, (a) all persons other than the Liquidating Trustee will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action that the Liquidating Trustee retains sole and exclusive authority to pursue in accordance with Section 10.04 of this Plan, and (b) all persons other than the Liquidating Trustee will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any Causes of Action.**

Section 10.06  **Release**.  **As of the Effective Date, each holder of a Claim or Equity Interest shall be deemed to forever release, waive and discharge all Claims or Equity Interests, demands, debts, rights, causes of action or liabilities, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date relating to the Debtors, the Chapter 11 Trustee and her current or former representatives, agents, advisors attorneys and professionals, the Liquidating Trustee and**

her current or former representatives, agents, advisors attorneys and professionals, the Committee and its current or former representatives, agents, advisors attorneys and professionals, the Chapter 11 Cases, the Plan or the Disclosure Statement against the Debtors, the Chapter 11 Trustee and her current or former representatives, agents, advisors attorneys and professionals, the Liquidating Trustee and her current or former representatives, agents, advisors attorneys and professionals and the Committee and its current or former representatives, agents, advisors attorneys and professionals; **provided however**, with respect to the Debtors, nothing in this paragraph shall be construed to release the Debtors from gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.

## ARTICLE XI
## RETENTION OF JURISDICTION

Section 11.01 **Jurisdiction of Court**. The Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1. To hear and determine any motions for the assumption or rejection of executory contracts or unexpired leases, and the allowance of any Claims resulting therefrom;

2. To hear and determine any and all Causes of Action, pending adversary proceedings, applications, and contested matters;

3. To hear and determine objections to Claims;

4. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

5. To issue such orders in aid of execution of this Plan to the extent authorized by section 1142 of the Bankruptcy Code;

6. To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

7. To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code;

8. To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

9. To recover all assets of the Debtors or the Liquidating Trust, as the case may be, and property of the Estates, wherever located;

10. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the Final Distribution Date);

11.     To hear any other matter consistent with the provisions of the Bankruptcy Code;

12.     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Liquidating Trust Agreement; and

13.     To enter a final decree closing the Chapter 11 Cases.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

Section 12.01  **Dissolution of the Committee and Formation of LT Committee**.  On the LT Funding Date, the Committee shall be dissolved and the members thereof shall be released and discharged from all authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's Professionals shall terminate.  The LT Committee shall be established with up to three members of the Committee, serving on the LT Funding Date, who have elected to serve on the LT Committee and shall become effective as of the LT Funding Date.

Section 12.02  **Effectuating Documents and Further Transactions**.  On the Confirmation Date, the Chapter 11 Trustee shall be authorized and directed to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of the Debtors as may be necessary or appropriate to effectuate and further evidence the provisions of this Plan, without any further action by or approval of any person or entity.

Section 12.03  **Sale of Debtors' Remaining Property**.  The Chapter 11 Trustee shall be authorized to sell, by auction, any remaining property of the Debtors without any further action

by or approval of any person or entity.  Any proceeds from such sales shall be distributed in accordance with Article VI hereof.

Section 12.04  **Exemption from Transfer Taxes**.  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, whether arising prior or subsequent to the Confirmation Date, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan shall not be subject to any stamp, real estate transfer, mortgage, recording or other similar tax.

Section 12.05  **Exculpation**.  **Neither the Chapter 11 Trustee, the Debtors nor the Committee, nor any of their respective members, officers, directors, employees, attorneys, advisors or agents who were members, officers, directors, employees, attorneys, advisors or agents, as the case may be, during the Chapter 11 Cases shall have or incur any liability to any holder of a Claim or Equity Interest or to any other Person for any act or omission in connection with, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of this Plan, the consummation or enforcement or administration of this Plan or the property to be distributed under this Plan except for willful misconduct or gross negligence as finally determined by a court of competent jurisdiction, and, in all respects, the Chapter 11 Trustee, the Debtors and the Committee and each of their respective members, officers, directors, employees, advisors and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

Section 12.06  **Bar Date for Requests for Allowance of Administrative Claims**.
Except for Administrative Claims subject to an earlier bar date established by any order of the

Court, which Administrative Claims shall continue to be subject to and, if applicable, bound by such order, all requests for allowance of an Administrative Claim (other than Administrative Claims of Professionals) must be filed with the Court and served on the Liquidating Trustee by 4:00 p.m. on the twenty-fifth (25th) calendar day following the Effective Date. Any Administrative Claim (other than Administrative Claims of Professionals) not filed and served within such time period shall be forever barred from assertion, and all Persons shall be permanently enjoined from asserting the same, against the Debtors, the Liquidating Trust and the Estates. The Liquidating Trustee shall have 90 days after the Effective Date to review and object to such Administrative Claims, and if an objection is not filed within such time, the Administrative Claim shall be deemed an Allowed Administrative Claim.

Section 12.07 **Post-Confirmation Date Fees and Expenses of Professionals**. Any Professional who incurs fees or expenses after the Confirmation Date but prior to the LT Funding Date, and which seeks payment of such fees or expenses, must submit an invoice to the Liquidating Trustee and the LT Committee. Invoices shall contain the same itemized detail of time and expense records as is required by guidelines of the Office of United States Trustee. The Liquidating Trustee shall pay such fees and expenses within ten (10) Business Days after their submission of such invoices unless the Liquidating Trustee or the LT Committee (acting in accordance with the Liquidating Trust Agreement) files an objection with the Court.

Section 12.08 **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with Article II of this Plan.

Section 12.09  **Modification of Plan**.  The Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Proponents if acting prior to the Effective Date, or otherwise the Liquidating Trustee may, upon order of the Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A holder of an Allowed Claim or Equity Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

Section 12.10  **Withdrawal or Revocation**.  The Proponents may withdraw or revoke this Plan at any time prior to the Confirmation Date.  If the Proponents revoke or withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

Section 12.11  **Courts of Competent Jurisdiction**.  If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Section 12.12  **Notices**.  Any notices to or requests of the Debtors by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, (iii) confirmed facsimile or telecopy transmission, or (iv) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

> Manhattan Investment Fund Ltd.
> c/o Lankler Siffert & Wohl LLP
> 500 Fifth Avenue, 33rd Floor
> New York, New York 10110
> Fax: (212) 921-8399
> Attn: Helen Gredd, Esq.

> -and-

> Manhattan Capital Management, Inc.
> c/o Lankler Siffert & Wohl LLP
> 500 Fifth Avenue, 33rd Floor
> New York, New York 10110
> Fax: (212) 921-8399
> Attn: Helen Gredd, Esq.

> with copies to:

> Baker & Hostetler LLP
> Attorneys for the Debtors
> 45 Rockefeller Plaza
> New York, New York 10111
> Fax: (212) 589-4201
> Attn:   Marc Hirschfield, Esq.
>         Amy Vanderwal, Esq.
> -and-

> Liquidating Trustee
> c/o Lankler Siffert & Wohl LLP
> 500 Fifth Avenue, 33rd Floor
> New York, New York 10110
> Fax: (212) 921-8399
> Attn: Helen Gredd, Esq.

> -and-

Dewey & LeBoeuf LLP
125 West 55th Street
New York, New York 10019
Fax:  (212) 424-8500
Attn: Peter Ivanick, Esq.

Section 12.13  **Severability**.  In the event that the Court, prior to entry of the

Confirmation Order, determines that any provision of this Plan is invalid, void or unenforceable,

the Court shall have the power to alter and interpret such term or provisions to make it valid or

enforceable to the maximum extent practicable, consistent with the original purpose of the term

or provision held to be invalid, void or unenforceable, and such term or provision shall then be

applicable as altered or interpreted.  Notwithstanding any such holding, alteration or

interpretation, the remainder of the terms and provisions of this Plan shall remain in full force

and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or

interpretation.  The Confirmation Order shall constitute a judicial determination and shall

provide that each term and provision of this Plan, as it may have been altered or interpreted in

accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 12.14  **Governing Law**.  Except to the extent the Bankruptcy Code or

Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be

governed by, and construed and enforced in accordance with, the laws of the State of New York,

without giving effect to the principles of conflicts of law thereof.

Section 12.15  **Failure of Effective Date**.  In the event that the Effective Date does not

occur, nothing in this Plan shall be binding on the Proponents, the Debtors, the Estates, the

Committee or any other Person, or otherwise be of any force or effect.

Section 12.16 **Exhibits**. All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

Dated: New York, New York
      December 22, 2009

Respectfully submitted,
**BAKER & HOSTETLER LLP**

/s/ Marc Hirschfield___
45 Rockefeller Plaza
New York, N.Y. 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
Marc Hirschfield
Email: mhirschfield@bakerlaw.com
Amy Vanderwal
Email: avanderwal@bakerlaw.com

Attorneys for Helen Gredd, Esq.,
Chapter 11 Trustee for Manhattan
Investment Fund Ltd. and Manhattan
Capital Management, Inc.

**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile:    (212) 259-6333
Peter Ivanick
Email:  pivanick@deweyleboeuf.com

Attorneys for Official Committee of Unsecured
Creditors

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:: | Case No.  00-10922 (BRL) |
| | 00-10921 (BRL) |
| MANHATTAN INVESTMENT FUND LTD., <u>et</u> <u>al</u>. | Chapter  11 |
| Debtors. | Jointly Administered |

**EXHIBIT 1 TO JOINT PLAN OF LIQUIDATION OF
MANHATTAN INVESTMENT FUND LTD. AND
MANHATTAN CAPITAL MANAGEMENT, INC.
PROPOSED JOINTLY BY THE TRUSTEE AND THE
<u>OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

# LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT ("Liquidating Trust Agreement" or "Agreement") is made this ___ day of _____, 2010, among Helen Gredd, Esq., as Chapter 11 trustee for Manhattan Investment Fund Ltd. and Manhattan Capital Management, Inc. (collectively, the "Debtors") and Helen Gredd, Esq., as Liquidating Trustee.

## RECITALS

The United States Bankruptcy Court for the Southern District of New York has approved this Liquidating Trust Agreement establishing the Liquidating Trust as part of the implementation of the Joint Plan of Liquidation of the Debtors dated as of December 22, 2009 (the "Plan").

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions of the Liquidating Trust, and in consideration of the confirmation of the Plan pursuant to the provisions of the Bankruptcy Code and of other good and valuable consideration, the receipt whereof is hereby acknowledged, the Chapter 11 Trustee has executed this Liquidating Trust Agreement and absolutely assigns to the Liquidating Trustee hereby, and to her successors in trust, all right, title and interest of the Debtors and its bankruptcy estate in and to the Trust Assets, as such term is defined below;

TO HAVE AND TO HOLD unto the Liquidating Trustee and her successors in trust, under and subject to the terms and conditions set forth herein and for the primary purpose of

liquidating the Trust Assets, for the benefit of the holders of Allowed Claims in Class 2 and Class 3, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, FURTHER, that upon termination of the Liquidating Trust in accordance with Article IX hereof, this Liquidating Trust Agreement shall be of no further force and effect;

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets are to be held and applied by the Liquidating Trustee subject to the further covenants, conditions and terms hereinafter set forth.

## ARTICLE I.

## DEFINITIONS

1.1     **Defined Terms**.  As used in this Liquidating Trust Agreement, (i) all capitalized terms used herein and not otherwise defined herein shall have the meanings as specified in the Plan and (ii) the following terms shall have the respective meanings specified below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context requires otherwise.

"Available Cash" means all Cash of the Trust, including Cash from investments of the Trust, less the amount of Cash of the Trust in, or designated for deposit in, the Reserve Fund.

"Liquidating Trust Funding Date" or "LT Funding Date" means the Effective Date.

"Liquidating Trustee" means Helen Gredd, Esq., and any successor appointed as provided herein.

"Liquidating Trust Committee" or "LT Committee" means up to three (3) members of the Committee serving on the LT Funding Date who have elected to serve on the LT Committee, or any successors as provided herein.

"Reserve Fund" means the funds held by the Liquidating Trustee as a reserve for: (a) Disputed Claims; (b) Allowed Claims as to which no distribution has been made, or only a partial distribution has been made; (c) the amount of incurred and projected Trust Administrative Expenses for which in the Liquidating Trustee's reasonable judgment it is prudent to reserve; and (d) any other matters for which in the Liquidating Trustee's judgment it is prudent to reserve.

"Trust" or "Liquidating Trust" means the trust created by this Liquidating Trust Agreement.

"Trust Administrative Expenses" means all costs, expenses and fees incurred in connection with administering the Trust and administering, collecting and liquidating the Trust Assets in accordance with this Liquidating Trust Agreement, including without limitation those provided for in §§ 4.3, 4.4 and 5.4 of this Agreement.

"Trust Assets" means all assets of the Estates and any assets hereafter acquired by the Liquidating Trust, excluding assets previously distributed, expended or otherwise disposed of by the Debtors, the Chapter 11 Trustee or the Liquidating Trustee.

# ARTICLE II.

## APPOINTMENT OF LIQUIDATING TRUSTEE

2.1     **Appointment of Liquidating Trustee**. Pursuant to the terms of the Plan, the Chapter 11 Trustee, on behalf of the Debtors has appointed a Liquidating Trustee to assume all of the duties as set forth herein.

# ARTICLE III.

## DUTIES OF THE LIQUIDATING TRUSTEE

3.1     **Initial Distribution**. On the LT Funding Date, the Liquidating Trustee shall make (or cause to be made) the distribution required by Section 6.01(1) of the Plan.

3.2     **Trust Assets**. The Liquidating Trustee shall administer, collect and liquidate the Trust Assets in accordance with her reasonable business judgment, the Plan, and, to the extent provided herein, with the approval of the LT Committee.

3.3     **Subsequent Distributions**. At such times and in such amounts as the Liquidating Trustee determines in her reasonable discretion, and subject to the terms of the Plan, the Liquidating Trustee shall make (or cause to be made) Subsequent Distributions of Available Cash to the holders of Allowed Class 2 Claims and Allowed Class 3 Claims, and, to the extent that holders of Allowed Claims in any other Class have not received, at the time of any Subsequent Distributions, the full distribution of Cash to which such holder is entitled to under the Plan, shall also make Subsequent Distributions to such holders. In addition, to the extent not included in the above, the Liquidating Trustee shall make Subsequent Distributions of net proceeds from the sale of Trust Assets, subject to the amount of such net proceeds, which the

Liquidating Trustee may, in her reasonable judgment, place in the Reserve Fund or retain to maintain the value of investments of the Trust. Subsequent Distributions shall not be required to be made (i) more than semi-annually, and (ii) in any event, shall be made only if the amount of Available Cash exceeds $25,000, in each case except as otherwise approved by the LT Committee or the Court, and except in the event that such Subsequent Distribution constitutes the Final Distribution, in which case the Liquidating Trustee shall make (or cause to be made) a distribution in an amount less than $25,000 if the amount of Available Cash is less than $25,000.

3.4 **Reports**. The Liquidating Trustee shall furnish to the LT Committee a report on a semi-annual basis, or at such intervals as shall be agreed upon by the Liquidating Trustee and the LT Committee, until the Liquidating Trust is terminated. Such reports shall include: the status of any litigations; a listing of Trust Assets disposed of during the reporting period; and the status of efforts to dispose of remaining Trust Assets, if any. The Trustee will provide to the LT Committee an annual budget/business plan and regularly report to the LT Committee on the status of said budget/business plan. The Liquidating Trustee shall file with the Court an annual report.

3.5 **Investments**. The Liquidating Trustee shall be permitted, from time to time, in her sole discretion, to invest all or a portion of the Cash in the Reserve Fund in United States Treasury Bills (or in a fund that invests substantially all of its assets in United States Treasury securities), interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk. All interest earned on such Cash shall in the first instance be returned to the Reserve Fund, and, after satisfaction of any expenses incurred in connection with the

maintenance of the Reserve Fund, including taxes payable on such interest income, if any, such interest shall be transferred out of the Reserve Fund and shall be applied first to Trust Administrative Expenses then to Available Cash.

3.6 **Claims Resolution**.

(a) The Liquidating Trustee shall review Claims that are not Allowed Claims and shall resolve such Claims through the claims objection process in the Court or by compromise. Court approval for compromise of a Claim shall not be required except as herein provided. Any compromise of a Claim in a disputed amount in excess of $200,000 shall be subject to the approval of the Court but such compromise shall not require notice to any party other than to the members of the LT Committee, and shall not require a hearing, unless the Court orders otherwise. Any compromise of a Claim with respect to which the amount in dispute is in excess of $100,000 shall also be subject to Court approval if the compromise is not approved by the LT Committee. The LT Trustee, in her sole discretion, may submit resolutions of Claims in disputed amounts of $200,000 and less to the Court for its approval.

(b) Any Subsequent Distribution shall fully reserve in Cash for Claims that are Disputed Claims at that time. The Liquidating Trustee shall have the right to deduct from any Subsequent Distribution the amount of any claim or cause of action against the Claimant, pending final judicial determination of such claim or cause of action.

(c) If a Disputed Claim, a Claim arising out of the rejection of an Executory Contract or any other Claim becomes an Allowed Claim, the Liquidating Trustee shall, within thirty (30) days of the date that such Claim becomes an Allowed Claim, distribute (or cause to be distributed) from the Reserve Fund to the holder of such Allowed Claim Cash in an amount

equal to such holder's Ratable Share of all distributions of Cash to holders of Allowed Claims in the same Class since the Effective Date.

(d)     If any distributions in respect of a particular Allowed Claim are unclaimed for a period (i) with respect to the initial distributions made on or after the Effective Date, ninety (90) days after the date such distribution was initially made, or (ii) with respect to the distributions made on a Subsequent Distribution Date, sixty (60) days after the date such distribution was initially made, they shall revert and be added to the general Trust Assets and be available for Trust Administrative Expenses and distributions hereunder free and clear of any claim, right or interest of the Person for whom originally intended.

3.7     **No On-Going Business**.  The Liquidating Trustee shall ensure that the Trust does not continue or engage in the conduct of a trade or business for Federal income tax purposes, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Trust.

3.8     **Tax Matters**.

(a)     The Liquidating Trustee shall file all tax returns and other filings with the appropriate governmental authorities on behalf of the Trust and the Trust Assets, including tax returns for the Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations.  The Liquidating Trustee shall provide such information to the holders of Allowed Claims as will enable them to properly file their separate tax returns and withhold and pay over any amounts required by tax law.

(b)     The holders of Allowed Claims shall be treated as the grantors and deemed owners of the Trust.  Any items of income, deduction, credit or loss of the Trust shall be allocated for Federal income tax purposes among the holders of Allowed Claims *pro rata* on the basis of their beneficial interests.  Any taxes shall be the responsibility of holders of Allowed Claims on a current basis.

(c)     The initial value of the Trust Assets shall be the value of such assets as reported to the holders of Allowed Claims as of the LT Funding Date, and this value shall be used for all Federal income tax purposes.

## ARTICLE IV.

## POWERS OF THE LIQUIDATING TRUSTEE

4.1     **Title**.  Legal title to all Trust Assets shall be vested in the Liquidating Trustee, except that the Liquidating Trustee shall have the power to cause legal title (or evidence of title) to any of the Trust Assets to be held by any nominee or Person, on such terms, in such manner, and with such power as the Liquidating Trustee may reasonably determine.

4.2     **Administration, Collection and Liquidation**.

(a)     The Liquidating Trustee shall have full power to administer, collect and liquidate the Trust Assets, subject to the provisions of this Liquidating Trust Agreement.  In connection therewith, the Liquidating Trustee may (i) sell, lease, dispose of and liquidate the Trust Assets, including without limitation, the power to settle any causes of action or other rights against third parties; (ii) make investments and maintain bank accounts as provided in this Liquidating Trustee Agreement; (iii) abandon Trust Assets; (iv) purchase insurance with such

coverage and limits as he deems desirable, including without limitation, insurance covering liabilities of the Liquidating Trustee incurred in connection with her services as Liquidating Trustee; (v) commence, with the approval of the LT Committee, Causes of Action, (vi) pursue, with the approval of the LT Committee, assets located outside the United States and (vii) engage in all acts that would constitute ordinary and customary activities of a trustee in performing the obligations of a trustee under a trust of this type.

(b) Court approval for settlement of causes of action and other rights shall not be required except as herein provided. Any settlement of any causes of action and other rights involving an original cause of action and other right in excess of $500,000 shall be subject to the approval of the Court. Any settlement of any causes of action and other rights involving an original cause of action and other right in excess of $100,000 shall also be subject to the approval of the Court if not approved by the LT Committee.

(c) Upon approval of the LT Committee, the Liquidating Trustee shall have the right to retain professionals including, without limitation, disbursing and transfer agents, legal counsel, accountants and other agents or advisors as deemed appropriate. Said professionals shall be compensated in accordance with Section 7.3 of this Agreement. Professionals so retained may be "interested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of the Debtor, the Committee or any member thereof.

(d) The Liquidating Trustee must obtain approval of the LT Committee prior to the selling of any of the Trust Assets having a book value in excess of $250,000 at a discount

of more than 45 percent of said book value, or, if the LT Committee fails to provide such approval, must obtain approval of the Court.

(e)     Any sale or other disposition of Trust Assets shall not be limited to a cash-only basis if the Liquidating Trustee so determines in her reasonable judgment that such form of sale is appropriate, which sale shall be subject to the approval of the LT Committee if the book value of any such assets to be sold or otherwise disposed of exceeds $250,000.

(f)     The Liquidating Trustee may abandon certain Trust Assets upon ten (10) days prior written notice to the LT Committee; however, if the LT Committee objects to said abandonment, the Liquidating Trustee shall, in such event, be required to obtain Court approval prior to abandoning such assets.

4.3     **Trust Administrative Expenses; Third Parties**.  The Liquidating Trustee shall pay (or cause to be paid) the Trust Administrative Expenses from the Reserve Fund.  No person dealing with the Trust shall be obligated to inquire as to the authority of the Liquidating Trustee in connection with the administration, collection or liquidation of Trust Assets or the administration of the Trust.

## ARTICLE V.

## LIQUIDATING TRUSTEE

5.1     **Resignation**.  The Liquidating Trustee may resign her trust by an instrument in writing signed by the Liquidating Trustee and filed with the Court, provided that the Liquidating Trustee shall continue to serve as Liquidating Trustee after her resignation until the time when

appointment of a successor Liquidating Trustee shall become effective in accordance with Section 5.2 hereof.

5.2     **Appointment of Successor Trustee**.  In the event of the death, resignation, incompetency or removal of the Liquidating Trustee, the LT Committee shall have the authority to select a successor Liquidating Trustee.  Such appointment may specify the date on which such appointment shall be effective.  Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge and deliver to the Court and to the retiring Liquidating Trustee an instrument accepting such appointment and shall, in such instrument, agree to be bound by this Liquidating Trust Agreement, and thereupon the resignation of the retiring Liquidating Trustee shall become effective and such successor Liquidating Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts and duties of the retiring Liquidating Trustee.

5.3     **Trust Continuance**.  The death, resignation, incompetency or removal of the Liquidating Trustee shall not operate to terminate the Trust created by this Liquidating Trust Agreement or to revoke any existing agency created pursuant to the terms of this Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee.  In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall promptly (i) execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under this Liquidating Trust Agreement and the conveyance of the Trust Assets then held by the Liquidating Trustee to her successor, (ii) deliver to the successor Liquidating Trustee all documents, instruments, records and other writings related to the Trust as may be in the possession of the Liquidating Trustee, and (iii) otherwise assist and

cooperate in effecting the assumption of her or its obligations and functions by such successor Liquidating Trustee.

5.4 **Compensation**.  The Liquidating Trustee shall be entitled to receive, from Trust Assets, compensation and reimbursement for her actual and necessary expenses reasonably incurred in connection with the performance of her duties.  The terms of compensation for the initial Liquidating Trustee and for any successor Liquidating Trustee shall be determined by the LT Committee.

5.5 **Bond**.  The Liquidating Trustee shall obtain a bond in favor of the beneficiaries of the Trust in an amount to be determined from time to time by the LT Committee (which amount will not be less than 110% of the amount held by the Liquidating Trustee at any time), the cost of which bond shall be a Trust Administrative Expense.  Court approval shall not be required to alter the amount of the bond.

5.6 **Reliance by Liquidating Trustee**.  The Liquidating Trustee may conclusively rely, and shall be fully protected personally in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which she has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or in the case of electronic mail, telecopies, and telexes, to have been sent by the proper party or parties, in each case without obligation to satisfy herself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of bad faith, willful misconduct, gross negligence or willful disregard of her duties, the Liquidating Trustee may conclusively rely as to the truth of statements and correctness of the facts and opinions expressed therein, and shall be fully protected personally in

acting thereon. The Liquidating Trustee may consult with legal counsel chosen by her with reasonable care and shall not be responsible for any loss or damages resulting from any action or non-action in good faith reliance by her upon such opinion or advice. The Liquidating Trustee shall have the right at any time to seek instructions from the Court concerning the administration, collection, liquidation, distribution or expenditure of the Trust Assets.

**ARTICLE VI.**

**LT COMMITTEE**

6.1   **LT Committee**. Vacancies on the LT Committee shall be filled by the majority vote of the remaining members if they so choose; notice thereof shall be given to the Liquidating Trustee who shall have fifteen (15) days to object in writing. If the Liquidating Trustee timely files such an objection, the proposed member shall not serve unless such member's selection is approved by the Court. The LT Committee may, but is not required to, select a chairman who shall have such duties as the LT Committee shall determine.

6.2   **Powers**. Although the Liquidating Trustee shall administer the Liquidating Trust, the LT Committee shall monitor the administration of the Liquidating Trust, including without limitation: (a) the sale or other disposition of Trust Assets and the overall strategy thereof; (b) the prosecution and settlement of litigation and the overall strategy thereof; (c) the timing, amount and methodology of Subsequent Distributions; (d) the establishment and maintenance of the Reserve Fund; (e) the resolution of Disputed Claims; and (f) the review of such annual budgets for the Liquidating Trust as the Liquidating Trustee may prepare. The LT Committee may authorize and direct the Liquidating Trustee to commence Causes of Action or pursue assets outside of the United States, and shall, thereafter, monitor and supervise any such Causes of

Action or pursuit of such assets. The LT Committee (a) shall retain the same professionals as the LT Trustee, and (b) may retain separate counsel in the event of a conflict between it and the Liquidating Trustee. If a Trust Asset consists of an equity interest that equals 20% or more of the voting securities in a corporation, the Liquidating Trustee shall consult with the LT Committee prior to voting any such securities except votes for the election of directors, approval of auditors and other ordinary course matters. Except as otherwise expressly provided, nothing contained in this Liquidating Trust Agreement shall be construed to limit the LT Committee's right to take such actions as it deems to be in the best interests of the holders of Allowed Claims in Class 2 and Class 3.

6.3 **Objections to Post-Confirmation Professional Fees**. The LT Committee and the Liquidating Trustee are each authorized to file with the Court an objection to any invoice submitted by a Professional seeking the payment of fees or expenses incurred after the Confirmation Date but prior to the LT Funding Date.

6.4 **Compensation**. Members of the LT Committee shall not be entitled to compensation. However, each member of the LT Committee shall be entitled to receive from Trust Assets as Trust Administrative Expenses reimbursement for its necessary out-of-pocket expenses reasonably incurred in connection with the performance of its duties, which reimbursement shall not include the expenses for fees paid to either counsel or financial advisors retained by the individual member of the LT Committee.

6.5 **Conflicts of Interests**. In the event that any matter under review or consideration by the LT Committee may involve a conflict of interest with respect to any member, such member shall disclose such potential conflict, shall abstain from voting on the matter if

determined by the LT Committee to involve a conflict of interest, and may be excluded by vote of a majority of the members then present and not subject to such conflict of interest from that portion of the meeting at which such matter is considered. Only for the purpose of a vote under this section to exclude a member from a meeting, any member not allowed to vote shall be counted for a quorum. A determination of the existence of a conflict of interest shall be made by a majority of the members present who are not subject to the alleged conflict of interest, upon advice of counsel to the LT Committee. Each member of the LT Committee retains the right to assert its own interests as a beneficiary of the Liquidating Trust and to take a position different from that of the LT Committee, provided, however, that no member shall purport to represent or speak for the LT Committee in connection therewith.

6.6 **Reliance by LT Committee**. The LT Committee, and each member thereof, may conclusively rely, and shall be fully protected personally in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which it has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or in the case of electronic mail, telecopies, and telexes, to have been sent by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of bad faith, willful misconduct, gross negligence or willful disregard of its duties, the LT Committee, and each member thereof, may conclusively rely as to the truth of statements and correctness of the facts and opinions expressed therein, and shall be fully protected personally in acting thereon. The LT Committee, and each member thereof, may consult with the Liquidating Trustee and or legal counsel and other

professionals and shall not be responsible for any loss or damages resulting from any action or non-action in good faith reliance by it upon such opinion or advice.

6.7 **By-laws**. The LT Committee may establish by-laws containing such provisions, consistent with the terms of this Agreement, deemed appropriate by the LT Committee.

6.8 **Subcommittees**. The LT Committee may establish one or more subcommittees with such authority as shall be delegated to it.

## ARTICLE VII.

## PROFESSIONALS

7.1 **Liquidating Trust**. The Liquidating Trustee may retain professional persons as provided in Section 4.2 of this Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not retain an attorney or accountant not retained during the Cases without the approval of either the LT Committee or the Court.

7.2 **LT Committee**. The LT Committee shall retain the same professionals as the Liquidating Trustee. The LT Committee may, as provided in Section 6.2 herein, retain separate counsel but only in the event of a conflict between it and the Liquidating Trustee.

7.3 **Payments**. Unless otherwise agreed by the Liquidating Trustee or the LT Committee, the professionals retained by the Liquidating Trustee (or by the LT Committee pursuant to Sections 6.2 and 7.2) herein shall be required to submit reasonably detailed invoices on a monthly basis to the Liquidating Trustee, including in such invoices a description of the work performed, of the professionals who performed such work, and the hourly rate of each such person, together with an itemized statement of expenses, with a copy to the members of the LT

Committee.  The Liquidating Trustee shall pay those invoices out of Trust Assets within 30 days after receipt of such bills, unless either the Liquidating Trustee or the LT Committee objects in writing to all or part of a bill within 20 days of receipt of such bills, or except as otherwise agreed by the Liquidating Trustee and the LT Committee with the relevant professional.  If there is a dispute as to a part of a bill, the non-disputed part may be paid by the Liquidating Trustee. Any dispute as to a Professional's bill shall be resolved by the Court.

## ARTICLE VIII.

## EXCULPATION AND REMOVAL PROVISIONS

8.1 **Exculpations**.  The Liquidating Trustee and each member of the LT Committee shall be exculpated and not be liable for their respective acts except to the extent that such acts constitute bad faith, willful misfeasance, gross negligence or willful disregard of their duties. Except as aforesaid, the Liquidating Trustee and the members of the LT Committee shall be entitled to be exculpated and indemnified from time to time from the Trust Assets against any and all losses, claims, costs, expenses and liabilities, arising out of or in connection with the Trust Assets or the affairs of the Trust.  The foregoing provisions of this section shall also extend to the employees, attorneys and agents of the Liquidating Trust and the LT Committee.

8.2 **Removal**.

(a)  The LT Committee acting by a unanimous vote of its incumbent members may remove the Liquidating Trustee with cause or without cause.  In the absence of such unanimity, any member of the LT Committee may file a motion with the Court seeking the removal of the Liquidating Trustee.

(b)     The LT Committee acting by a unanimous vote of its incumbent members (excluding those members whose removal is sought) may remove any member or members of the LT Committee for cause.

## ARTICLE IX.

## TRUST TERMINATION

9.1     **General**.  The Trust shall terminate, if not terminated prior to that time as provided herein, six (6) years from date of this Agreement, or as may be extended by the Court if warranted by the facts and the circumstances.  Any extension shall be approved by the Court within six (6) months before the expiration of the current term.

9.2     **Early Termination**.  The Trust shall terminate prior to the time prescribed in Section 9.1 hereof if (a) all Allowed Claims in Classes 1, 2 and 3 have been paid in full; or (b) all Trust Assets have been distributed, expended or otherwise disposed of as provided herein.  If there is an early termination of the Trust, the Liquidating Trustee shall file a notice thereof with the Court.

## ARTICLE X.

## MISCELLANEOUS

10.1     **Notices**.  All notices, requests or other communications required or permitted to be made in accordance with this Liquidating Trust Agreement to the Liquidating Trustee shall be given in writing (delivered by hand or by certified mail, return receipt requested), or by telecopy as follows:

Liquidating Trustee
c/o Lankler Siffert & Wohl LLP
500 Fifth Ave., 33rd Floor
New York, N.Y. 10110
Attn: Helen Gredd, Esq.
Tel: (212) 921-8399
Fax: (212) 764-3701

With a copy to:

LT Committee
c/o Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Attn:   Marc Hirschfield, Esq.
Tel.: (212) 589-4200
Fax: (212) 589-4201


10.2    **Effectiveness**.  This Liquidating Trust Agreement shall become effective on the Effective Date of the Plan.


10.3    **Counterparts**.  This Liquidating Trust Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.


10.4    **Governing Law**.  Except to the extent governed by the Bankruptcy Code, this Liquidating Trust Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of New York.


10.5    **Exclusive Jurisdiction and Standing**.  As provided in Section 11.01(12) of the Plan, the Court has exclusive jurisdiction over all controversies, suits and disputes that may arise under this Liquidating Trust Agreement.  The LT Committee shall have standing in any such proceeding to enforce its rights hereunder.

10.6     **Severability**.  Any provision of this Liquidating Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

IN WITNESS WHEREOF, the parties hereto have executed this Liquidating Trust Agreement or caused this Liquidating Trust Agreement to be duly executed by their respective representatives thereunto duly authorized as of the day and year first above written.

Dated: _____ __, 2010

_____
MANHATTAN INVESTMENT FUND, LTD.

_____
MANHATTAN CAPITAL MANAGEMENT, INC.

_____
LIQUIDATING TRUSTEE